UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

CLAUDETTE HALL,

      Plaintiff,

-against-

AMERICAN HONDA MOTOR CO;
AMERICAN HONDA FINANCE
CORPORATION D/B/A HONDA FINANCIAL
SERVICES; JYD TOWING, LLC; and JOHN
DOES 1-25.

      Defendant(s).

Civil Case Number: _____

**CIVIL ACTION**

**COMPLAINT
AND
DEMAND FOR JURY TRIAL**

Plaintiff, CLAUDETTE HALL (hereinafter "Plaintiff") by and through her undersigned attorney, alleges against the above-named Defendants, AMERICAN HONDA MOTOR CO, INC. (hereinafter "AHMC"); AMERICAN HONDA FINANCE CORPORATION D/B/A HONDA FINANCIAL SERVICES, (hereinafter "HFC"); JYD TOWING, LLC (hereinafter "JYD") and John Does 1-25, collectively ("Defendants") their employees, agents, and successors the following:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action for damages and declaratory and injunctive relief arising from Defendants' violation of 15 U.S.C. § 1692 *et seq*., the Fair Debt Collection Practices Act (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices. The FDCPA, provides for the initiation of court

11

proceedings to enjoin violations of the FDCPA and to secure such equitable relief as may be appropriate in each case.

2. Plaintiff further brings this action for damages arising from Defendants' violations of New York General Business Law ("GBL") §349, which prohibits engaging in deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York.

3. Plaintiff further brings this action for damages for conversion related to Defendants wrongfully taking Plaintiff's 2018 Honda Civic, Vin: 2HGFC2F72JH540353 (the "vehicle")

4. Finally, Plaintiff further brings this action for damages related to assault and battery related to Defendants' wrongfully taking Plaintiff's vehicle.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331. This is an action for violations of 15 U.S.C. § 1692 *et seq*. This Court also has supplemental jurisdiction over Plaintiff's GBL, conversation, assault and battery claims.

6. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## DEFINITIONS

7. As used in reference to the FDCPA, the terms "creditor," "communication" "consumer," "debt," and "debt collector" are defined in § 803 of the FDCPA and 15 U.S.C. § 1692a.

11

8. As used in reference to the UCC, the terms "collateral", "debtor", and "secured party" are defined in § 9-102 of the UCC.

## PARTIES

9. Plaintiff, is a natural person and a resident of the State of New York, and is a "Consumer" as defined by 15 U.S.C. § 1692a(3).

10. Defendant AHMC is a foreign business corporation with principal executive offices at 20800 Madrona Avenue, Torrance, California 90503.

11. Defendant AHMC accepts service of process in this state at CT Corporation System, 28 Liberty Street, New York, New York 10005.

12. Defendant HFC is a foreign business corporation with principal executive offices at 20800 Madrona Avenue, Torrance, California 90503.

13. Defendant HFC accepts service of process in this state at CT Corporation System, 28 Liberty Street, New York, New York 10005.

14. Defendant JYD is a domestic limited liability company with a business location at 185-06 Merrick Blvd, Springfield Gardens, New York 11520.

15. Defendant JYD accepts service of process in this state at 7 Bridge Street, Howard Beach, New York 11414.

16. Defendant JYD is a repossession company that regularly engages in repossession activities in New York, and is a "debt collector" as defined by FDCPA § 1692a(6).

17. John Does 1-25, are fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identities will be disclosed in discovery and should be made parties to this action.

11

## AGENCY ALLEGATIONS

18. Plaintiff is informed and believes and thereon alleges that all times herein mentioned each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendant.

19. Defendants AHCMC and/or HFC authorized JYD to repossess the vehicle which could not be accomplished without a breach of the peace.

20. Defendants AHCMC and/or HFC hired JYD to repossess the vehicle which could not be accomplished without a breach of the peace.

21. Defendants AHCMC and/or HFC employed JYD to repossess the vehicle which could not be accomplished without a breach of the peace.

22. Defendants AHCMC and/or HFC contracted with JYD to repossess the vehicle which could not be accomplished without a breach of the peace.

## FACTUAL ALLEGATIONS

### The Lease

23. On or before March 2018, Plaintiff allegedly incurred a financial obligation to Defendants AHMC and/or HFC via a "Motor Vehicle Lease Agreement-New York" (the "lease") at non-party Honda of Valley Stream located at 164 East Sunrise Highway, Valley Stream New York 11580 to lease the vehicle.

24. The AHMC and/or HFC obligation arose out of a transaction, in which money, property, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes.

25. The AHMC and/or HFC obligation arose out of a transaction for personal purposes.

11

26. The AHMC and/or HFC obligation did not arise out of a transaction for business purposes.

27. The AHMC and/or HFC obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

28. AHMC and/or HFC is a "creditor" as defined by 15 U.S.C. § 1692a(4).

29. The vehicle is "collateral" as defined by § 9-102(a)(12) of the UCC.

30. Plaintiff is a "debtor" as defined by § 9-102(a)(28) of the UCC.

31. AHMC is a "secured party" as defined by § 9-102(73) of the UCC.

32. HFC is a "secured party" as defined by § 9-102(73) of the UCC.

33. JYD is a "secured party" as defined by § 9-102(73) of the UCC.

34. Under the lease, Plaintiff is deemed the "Lessee".

35. Under the lease, Honda of Valley Stream is deemed the "Dealer" or "Lessor" of the vehicle

36. Under the lease, non-party HVT, Inc. is deemed the "assignee" of the vehicle and the "…the assignee for all New York Honda and Acura leases."

37. Under the lease, Defendant HFC "…serves as the administrator of the Lease on half of HVT, Inc."

38. Defendant HFC is a "…wholly owned subsidiary of…" Defendant American Honda Motor Co., Inc…"[1]

39. In or around March 2018, Plaintiff began making payments for the vehicle in accordance with her lease to HFC.

40. At some time prior to February 18, 2019, plaintiff either fell behind on her payment schedule for the vehicle and/or began making partial payments pursuant to the lease.

---

[1] See also https://www.hondafinancialservices.com/help/about-us "About Honda Financial Services and American Honda Finance Corporation". (*current as of July 29, 2019.*)

11

**Defendants' Relationship**

41. At some time prior to February 18, 2019, Defendant JYD entered into an agreement with Defendants AHCMC and/or HFC authorizing JYD to repossess the vehicle.

42. At some time prior to February 18, 2019, Defendant JYD entered into an agreement with Defendants AHCMC and/or HFC hiring JYD to repossess the vehicle.

43. At some time prior to February 18, 2019, Defendant JYD entered into an agreement with Defendants AHCMC and/or HFC employing JYD to repossess the vehicle.

44. At some time prior to February 18, 2019, Defendant JYD entered into an agreement with Defendants AHCMC and/or HFC contracting with JYD to repossess the vehicle.

**JYD's Wrongful Repossession of the Vehicle By a Breach of the Peace**

45. On February 18, 2019, at approximately 7:00pm, and while she was at the hair salon, Plaintiff received a call on her cellular phone from an individual from "Honda". The individual stated in sum and substance that Plaintiff needed to make a four hundred eighty and 00/100 ($480.00) dollar payment for the vehicle or it will be repossessed.

46. Plaintiff immediately left the hair salon, headed to a Wal-Mart in Valley Stream, New York and at approximately 8:00pm (merely an hour after the telephone call from "Honda"), made a payment to HFC via Moneygram. A copy of the Walmart receipt is annexed as **Ex. A**. An additional eight dollars was charged to Plaintiff for using Moneygram. Thus, the total amount paid to Moneygram was four hundred eighty-eight and 00/100 ($488.00) dollars.

47. Shortly after 8:00pm, Plaintiff contacted Honda to inform them that she made the $480.00 payment. Critically, Honda informed Plaintiff that a repossession ("repo") order

11

for the vehicle had already been generated and then the order could not be rescinded until the next morning of February 19, 2019.

48. At some time after that telephone call with Honda she returned home to her apartment.

49. In addition to normal uses for one's vehicle, Plaintiff used her vehicle daily to travel to, and from, the school where she was employed. When she returned from work, she would park her vehicle in the designated parking lot assigned to her apartment building.

50. Given that Plaintiff is a single parent, sole breadwinner for her two children, and that she was informed by Honda a repo order was generated, Plaintiff, at approximately 10:00pm on February 18, 2019, became worried that her vehicle would be towed away that evening. Accordingly, she left her apartment and coincidentally, or not so, found two employees ("JYD Employee 1" and "JYD Employee 2") of Defendant, JYD, who already had hooked the vehicle up to a JYD tow truck in the parking lot.

51. Upon information and belief, Defendant AHMC and/or HFC hired, authorized, appointed or permitted JYD to repossess the vehicle.

52. JYD Employee 1 was the driver of the JYD tow truck who, upon information and belief, was of Hispanic descent, male in his 40s, heavyset and bald.

53. JYD Employee 2 was the passenger of the JYD tow truck who, upon information and belief, was also of Hispanic descent, male, thinner than JYD Employee 2, and wearing a New York Yankees baseball cap.

54. Plaintiff immediately explained to JYD Employee 1 and JYD Employee 2 that she had spoken with Honda earlier that evening, and had written proof of the $480.00 payment made to Honda she allegedly owed for her vehicle.

55. JYD Employee 1 and JYD Employee 2 told her to get proof that she had made the $480.00 payment allegedly owed for her vehicle.

11

56. Plaintiff immediately returned to her apartment and retrieved the Walmart receipt. **Ex. A**. She then presented it to JYD Employee 1 and JYD Employee 2, who told her to make sure she followed up with the Honda the next day on February 19, 2019. Id.

57. Then, around 10:30pm on February 18, 2019, JYD Employee 1 and JYD Employee 2, without incident, unhooked the vehicle from Defendant, JYD's tow truck, and left it in Plaintiff's apartment building parking lot.

58. Despite the assurances of JYD Employee 1 and JYD Employee 2, and particularly in light of the repo order still in effect, Plaintiff was worried that her vehicle would be towed overnight. Accordingly, Plaintiff drove the vehicle out of the parking lot with the goal of storing it a friend's house that evening. Oddly, during her drive, she noticed the JYD tow truck still in her neighborhood but assumed JYD Employee 1 and JYD Employee 2 were getting a late night dinner.

59. Around 11:00pm on February 18, 2019, Plaintiff decided to just keep the vehicle parked in her parking lot overnight, and returned there. Unfortunately, she ended up falling asleep in the vehicle.

60. The next morning, and while still asleep in the vehicle, around 12:00am on February 19, 2019 Plaintiff was awoken and startled to find both JYD Employee 1 and JYD Employee 2, on the sides of the vehicle, violently attempting to both push and pull her out of the vehicle, in a blatant "breach of the peace" under UCC § 9-609(b)(2).

61. Moreover, JYD Employee 2 was inappropriately feeling her neck, touching her breasts, and chest, which was also a "breach of the peace" under UCC § 9-609(b)(2).

62. This entire shocking encounter with JYD Employee 1 and JYD Employee 2 did not make any sense to Plaintiff given that she had previously showed them the Walmart receipt

11

(**Ex. A**), and that they left her in the parking lot with her vehicle detached from the tow truck.

63. After JYD Employee 1 and JYD Employee 2, ceased physically assaulting Plaintiff, she called her sister from the vehicle. Someone then called 911 and Plaintiff is unsure whether it was her sister, JYD Employee 1 or JYD Employee 2.

64. Approximately four members of the New York Police Department (NYPD) arrived at which time either JYD Employee 1 or JYD Employee 2 showed the NYPD documents on their cellular phones. Plaintiff showed the NYPD the Walmart receipt (**Ex. A**); however, for reasons only known to the NYPD and/or Defendant, JYD, the NYPD permitted JYD to take the vehicle.

65. At no time during either JYD Employee 1 or JYD Employee 2's initial encounter with Plaintiff in the evening of February 18, 2019, or when they physically assaulted her in the early hours of February 19, 2019, did they provide her with any documentation indicating they had a right to repossess the vehicle.

66. Late in the day of February 19, 2019 (i.e. the same day that she was physically assaulted by JYD, and its employees engaged in a "breach of the peace" under UCC § 9-609(b)(2) to repossess the vehicle), Plaintiff developed bruising on her chest as well as experienced difficulty breathing. Accordingly, she went to St. Johns Episcopal Hospital and was diagnosed with a contusion.

67. In addition, on February 19, 2019, she went to her local NYPD precinct to formally report the incident with the NYPD. A copy of the Incident Information Slip is annexed as **Ex. B**.

68. Plaintiff subsequently experienced back spasms related to the JYD assault wherein she sought treatment by an orthopedist that referred her for physical therapy.

## POLICIES AND PRACTICES COMPLAINED OF

69. It is Defendants policy and practice to repossess vehicles, violate the FDCPA and the GBL by:

    a. Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    b. Taking possession of collateral, without judicial process, by breaching the peace;

    c. Engaging in deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service;

    d. Engaging in an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights;

    e. Engaging in an intentional wrongful physical contact with another person without consent.

    f. Engaging in an intentional placing of another person in fear of imminent harmful or offensive contact.

## COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

70. Plaintiff repeats the allegations contained in paragraphs 1 through 69 as if the same were set forth at length herein.

71. Defendant JYD violated 15 U.S.C. § 1692 *et seq.* of the FDCPA in connection with its repossession of the vehicle;

72. By repossessing the vehicle in a manner in which its authorized agents breached the peace, Defendant AHMC is liable for Defendant JYD's violations of the FDCPA.

11

73. By repossessing the vehicle in a manner in which its authorized agents breached the peace, Defendant HFC is liable for Defendant JYD's violations of the FDCPA.

74. Defendant JYD violated 15 U.S.C. § 1692f(6)(A) of the FDCPA by taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest.

75. Defendant JYD's conduct, as described above, violated FDCPA § 1692f(6), in that Defendant JYD breached the peace in repossessing the vehicle.

76. Additionally, Defendant JYD threatened repossession of the vehicle even though there was no present right to possession in that the vehicle could not be lawfully repossessed under circumstances that would not constitute a breach of peace.

77. Plaintiff suffered a risk of economic injury due to Defendant JYD's violation of 15 U.S.C. §1692f *et seq.*, of the FDCPA by taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest.

78. Plaintiff seeks damages against Defendants pursuant to Section 1692k of the FDCPA.

## COUNT II

### VIOLATIONS OF NEW YORK's GENERAL BUSINESS LAW § 349

79. Plaintiff repeats the allegations contained in paragraphs 1 through 78 as if the same were set forth at length herein.

80. Defendant JYD violated GBL § 349 in connection with its repossession of the vehicle.

81. By repossessing the vehicle in a manner in which its authorized agents breached the peace, Defendant AHMC is liable for Defendant JYD's violations of GBL § 349.

82. By repossessing the vehicle in a manner in which its authorized agents breached the peace, Defendant HFC is liable for Defendant JYD's violations of GBL § 349.

83. Defendant JYD violated GBL § 349 by misrepresenting that it had the right to possession in that the vehicle could not be lawfully repossessed under circumstances that would not constitute a breach of peace.

84. Defendant JYD willfully and knowingly violated GBL § 349 in its repossession of the vehicle by a breach of the peace.

85. Plaintiff seeks damages against Defendants pursuant to GBL § 349(h)

## COUNT III

## CONVERSION

86. Plaintiff repeats the allegations contained in paragraphs 1 through 85 as if the same were set forth at length herein.

87. The wrongfully repossessed vehicle taken by Defendants by a breach of the peace, was leased by Plaintiff, and thus, Plaintiff had legal ownership of the vehicle.

88. Defendants are liable for the conversion of the repossessed vehicle alleged by Plaintiff to be taken by a breach of the peace.

## COUNT IV

## BATTERY

89. Plaintiff repeats the allegations contained in paragraphs 1 through 88 as if the same were set forth at length herein.

90. Defendant JYD committed battery in connection with its repossession of the vehicle.

91. By repossessing the vehicle in a manner in which its authorized agents breached the peace, Defendant AHMC is liable for Defendant JYD's battery upon Plaintiff.

92. By repossessing the vehicle in a manner in which its authorized agents breached the peace, Defendant HFC is liable for Defendant JYD's battery upon Plaintiff.

93. Defendant JYD intentionally and wrongfully pushed and pulled Plaintiff out of her vehicle without her consent in connection with their repossession of the vehicle.

94. Defendant JYD intentionally and wrongfully felt Plaintiff's neck without her consent in connection with their repossession of the vehicle.

95. Defendant JYD intentionally and wrongfully touched Plaintiff's breasts without her consent in connection with their repossession of the vehicle.

96. Defendant JYD intentionally and wrongfully touched Plaintiff's chest without her consent in connection with their repossession of the vehicle.

97. Plaintiff suffered actual damages, including pain and suffering, proximately caused by Defendant JYD's battery.

## COUNT V

## ASSAULT

98. Plaintiff repeats the allegations contained in paragraphs 1 through 97 as if the same were set forth at length herein.

99. Defendant JYD committed assault in connection with its repossession of the vehicle.

100. By repossessing the vehicle in a manner in which its authorized agents breached the peace, Defendant AHMC is liable for Defendant JYD's assault to Plaintiff.

101. By repossessing the vehicle in a manner in which its authorized agents breached the peace, Defendant HFC is liable for Defendant JYD's assault to Plaintiff.

102. Defendant JYD intentionally placed Plaintiff in fear of imminent harmful or offensive contact by pushing and pulling Plaintiff out of her vehicle in connection with their repossession of the vehicle.

103. Defendant JYD intentionally placed Plaintiff in fear of imminent harmful or offensive contact by feeling Plaintiff's neck in connection with their repossession of the vehicle.

104. Defendant JYD intentionally placed Plaintiff in fear of imminent harmful or offensive contact by touching Plaintiff's breasts in connection with their repossession of the vehicle.

105. Defendant JYD intentionally placed Plaintiff in fear of imminent harmful or offensive contact by touching Plaintiff's chest in connection with their repossession of the vehicle.

106. Plaintiff suffered actual damages, including pain and suffering, proximately caused by JYD's assault.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a) Issuing a preliminary and/or permanent injunction restraining Defendants, their employees, agents and successors from, *inter alia,* engaging in conduct and practices that are in violation of the FDCPA;

(b) Issuing a declaratory Order requiring Defendants to make corrective disclosures;

(c) Awarding Plaintiff statutory damages under Section 1692k of the FDCPA;

(d) Awarding Plaintiff actual damages, including for pain and suffering;

(e) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses pursuant to Section 1692k of the FDCPA and GBL 349(h);

(f) Awarding pre-judgment interest and post-judgment interest; and

  (g)  Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: New York, NY
   July 29, 2019

                /*s/ Joseph K. Jones*
                Joseph K. Jones, Esq.
                JONES, WOLF & KAPASI, LLC
                One Grand Central Place
                60 East 42nd. Street, 46th Floor
                New York, New York 10165
                (646) 459-7971 telephone
                (646) 459-7971 facsimile
                jkj@legaljones.com

                /*s/ Benjamin J. Wolf*
                Benjamin J. Wolf, Esq.
                JONES, WOLF & KAPASI, LLC
                One Grand Central Place
                60 East 42nd. Street, 46th Floor
                New York, New York 10165
                (646) 459-7971 telephone
                (646) 459-7971 facsimile
                bwolf@legaljones.com

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

                */s/ Joseph K. Jones*
                Joseph K. Jones

# EXHIBIT A

```
CUSTOMER COPY/COPIA DEL CLIENTE

WAL*MART 5293
77 GREEN ACRES ROAD
VALLEY STREAM, NY 105810000

MoneyGram Payment Systems, Inc.
1550 Utica Ave S
Minneapolis, MN 55416
1-800-926-9400
www.moneygram.com

ExpressPayment (TM)

SEND/ENVIO

Date/Fecha: 02-18-2019
Time/Hora: 20:00:49 PM

Sender Information /Información
de la persona envía
CLAUDETTE HALL


Phone/Teléfono:


Receiver Information /Información
de la persona que recibe

HONDA ACURA FINANCIAL
Phone/Teléfono: 1-800-999-1009
Account/Cuenta: *****1330

Reference/Referencia#
           34205142

Amount Transferred/Cantidad del Envio:
480.00 USD
Fee/Cargos: 8.00 USD
Discount/Descuento: -0.00 USD
Taxes: +0.00 USD
Total: 488.00 USD
Collect/Cobrado: 488.00 USD

Payments made after 03:00 PM CST will
add an additional day to the posting
time./Pagos realizados después de
03:00 PM CST serán entregados un
día después del
depósito.

Privacy Notice. Federal law requires
us to tell you how we collect, share,
and protect your personal information.
Our privacy policy has not changed in
ways that require additional notice
and you may review our policy and
practices with respect to your
personal information at
www.moneygram.com or we will mail you
a free copy upon request if you call
us at 1-800-926-9400.

Aviso de Privacidad Aviso de
Privacidad" la ley federal nos
exige que le informemos como
recopilamos, compartimos y protegemos
su información personal. Nuestra
póliza de privacidad no ha
cambiado en formas que requiere
notificación adicional y usted
puede revisar nuestra póliza y
practicas con respecto a su
información personal en
www.moneygram.com o le enviaremos por
correo una copia gratuita a
petición si nos llama al
1-800-926-9400.
```

See back of receipt for your chance to win $1000 ID #:7N4YCB1VBO6M

# Walmart

### Save money. Live better.

```
                 9127 Mgr:ADAM GRATZ
            VALLEY STREAM NY 11581
ST# 05293  OP# 007887 TE# 61 TR# 09060
****** MoneyGram Services SALE *******
MGI BPAMT      060538812239     480.00 0
Amount Paid
MGI BPFEE      060538812240       8.00 0
Final Fee Amount
              REF ID# MGFS
```



```
***********************************
              SUBTOTAL     488.00
                 TOTAL     488.00
           DEBIT TEND      488.00
           CHANGE DUE        0.00
EFT DEBIT    PAY FROM PRIMARY
   488.00  TOTAL PURCHASE
US DEBIT    **** **** **** 4814 I 0
REF # 905000342832
NETWORK ID. 0056 APPR CODE 216432
TERMINAL # SC010255
          02/18/19      20:00:38
             # ITEMS SOLD 2
TC# 6537 1926 5532 0359 5941 7
```



```
  02/18/19        20:00:55
```



# EXHIBIT B



**INCIDENT INFORMATION SLIP**
PD 301-164 (Rev. 07-15)

Date: 2/19/19

Welcome to __101 Precinct__   __16-12 Mott Ave., Far Rockaway, NY 11691__   __718-868-3414__
(Command)　　　　　　　(Address)　　　　　　　　　　　　　　　(Telephone No.)

We hope that your business with us was handled satisfactorily. Your particular matter has been assigned the following number(s):

Complaint Report No.: __2019-101-682__   Accident Report No.: _____   Aided Report No.: _____

Reported to: __PO Petroglia__ _____ Date of Occurrence: __2/19/19__ Time: __0100__
　　　　　　(Rank)　(Name)　　　(Shield No.)

Location of Occurrence: _____

Crime: __Harassment__

Please keep this report should you have to refer to this matter in the future. If you need any further assistance feel free to contact us at telephone number _____. Please let us know if you have any suggestions on how we can better serve you. As you may already know, we will provide you with a crime prevention survey of your residence or business.

Please ask for more information on this and other crime prevention initiatives. Our goal is to make you and your property safe.

[signature] RePO

**COURTESY — PROFESSIONALISM — RESPECT**

REMEMBER: CALL "911" FOR EMERGENCIES ONLY!!!!